UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PLC TRENCHING CO., LLC,

                                    Plaintiff,                6:11-CV-0515
                                                              (GTS/DEP)
v.

GARY NEWTON, JR.; CABLE SYS.
INSTALLATION LLC; and CABLE SYS.
INSTALLATIONS CORP.,

                                    Defendants,
_____

APPEARANCES:                                  OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP           CYNTHIA A. MURRAY, ESQ.
  Counsel for Plaintiff                       THEODORE L. HECHT, ESQ.
140 Broadway, Suite 3100
New York, NY 10005

BOND, SCHOENECK & KING PLLC                   BRIAN LAUDADIO, ESQ.
  Counsel for Defendant Gary Newton, Jr.      GREGORY J. McDONALD, ESQ.
350 Linden Oaks, Suite 310
Rochester, NY 14625

LeCLAIR RYAN                                  ANDREW P. ZAPPIA, ESQ.
  Counsel for Corporate Defendants            WENDELL W. HARRIS, ESQ.
290 Linden Oaks, Suite 310
Rochester, NY 14625

HON. GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

          Currently before the Court, in this misappropriation-of-trade-secrets action filed by PLC

Trenching Co., LLC ("Plaintiff") against Gary Newton, Jr., Cable System Installation LLC, and

Cable System Installations Corp. ("Defendants"), is Defendants' motion to dismiss certain claims

in Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 40.)  For the reasons set forth below, Defendants'

motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

Because the parties' memoranda of law demonstrate an accurate understanding of the

nature of Plaintiff's claims in its Amended Complaint, and the nature of the opposing arguments

regarding those claims, the Court will not recite those claims and arguments in their entirety in

this Decision and Order, which is intended primarily for the review of the parties.

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, a few words regarding that

ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice of* what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). Indeed, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement that factual allegations must plausibly suggest an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, it is worth noting that numerous courts have wrestled with the question of

whether Federal Rules of Civil Procedure's simple and brief form complaint for patent

infringement ("Form 18") remains, after *Twombly* and *Iqbal*, sufficient to withstand an attack

under Fed. R. Civ. P. 12(b)(6).[1]  This is because Form 18 arguably permits threadbare recitals of

patent claims.[2]  Some courts have answered this question in the affirmative.[3]  Some have

---

[1]    Rule 84 of the Federal Rules of Civil Procedure provides, "The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84.  Furthermore, the Advisory Committee Notes to Fed. R. Civ. P. 84 state, in pertinent part, "[T]he forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn . . . . [P]ractitioner[s] using them may rely on them to that extent." Fed. R. Civ. P. 84, Advisory Committee Notes: 1946 Amendment.

[2]    Specifically, Form 18 reads as follows, in its entirety:

(Caption–See Form 1.)
1.    (Statement of Jurisdiction–See Form 7).
2.    On *date*, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.
3.    The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.
4.    The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all *electric motors* it manufactures and sells and has given the defendant written notice of the infringement.

answered it in the negative.[4]  Others have chosen a middle ground, answering the question in the

affirmative for claims of direct patent infringement, but in the negative for other patent claims.[5]

Fortunately, the Court need not resolve this issue because it finds that it would reach the

same conclusion about Plaintiff's patent claims (stated below in Part III.A. of this Decision and

Order) regardless of which of the two above-described standards it applies.  The Court makes

this finding for two reasons: (1) even Form 18 requires that the plaintiff clearly allege, *inter alia*,

that a particular defendant "ma[de], [sold], or us[ed]" a thing "that embod[ies] the patented

invention"; and (2) even to the extent that Plaintiff has done so with regard to certain of his

patent claims, Form 18 does not relieve a plaintiff of the consequences of pleading facts that

---

Therefore, the plaintiff demands:
(a)    a preliminary and final injunction against the continuing
        infringement;
(b)    an accounting for damages; and
(c)    interest and costs.
(Date and sign–See Form 2.)

Fed. R. Civ. P. App. Form 18 (emphasis in original).

    [3]    *See, e.g., McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)
(holding that *Twombly* did not abrogate Form 16 [now Form 18] and therefore pleading a patent
claim in conformity with Form 16 is sufficient to survive a 12[b][6] motion); *W. L. Gore &
Assoc., Inc. v. Medtronic, Inc.*, 778 F. Supp.2d 667, 675 (E.D. Va. 2011) ("[T]he Court agrees
with the post-*Twombly* holding in *McZeal* that a litigant who complies with the provisions of
Form 18 has sufficiently stated a claim for direct infringement as contemplated by Rule
12(b)(6).").

    [4]    *See, e.g., Bender v. LG Elecs. U.S.A., Inc.*, 09-CV-2114, 2010 U.S. Dist. LEXIS
33075, at *15, 20 (N.D. Cal. Mar. 11, 2010) (recognizing "the lack of complete uniformity"
among courts on the issue and deciding the 12[b][6] motion under *Twombly* and *Iqbal* rather than
Form 18).

    [5]    *See, e.g., Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp.2d 1156, 1158
(C.D. Cal. 2010) ("Some district courts have concluded . . . that while the Court otherwise must
apply the plausibility standard of *Twombly* and *Iqbal* to patent claims and counterclaims, for
allegations of direct infringement, pleading in conformance with Form 18 is sufficient.").

show that it is not entitled to the relief it requests ("pleading itself out of court," as the saying goes).[6]

## III.    ANALYSIS

### A.    Plaintiff's Claims of Patent Infringement

The Fifth, Sixth and Seventh Claims of Plaintiff's Amended Complaint allege that Defendant Newton and the two corporate Defendants ("Defendant CSI") have violated three of Plaintiff's patents: (1) U.S. Patent No. 6,854,931 regarding an "Apparatus for establishing [an] adjustable depth bed in trenches for utility lines and encasing the lines" ("the '931 Patent"); (2) U.S. Patent No. 6,981,342 regarding a "Screening Laying Box" ("the '342 Patent"); and (3) U.S. Patent No. 7,310,896 regarding a "Mechanized unit for protectively encasing a utility in a trench with processed excavated trench material" ("the '896 Patent").  (Dkt. No. 39, at ¶¶ 19-20, 65, 132, 139, 146.)

More specifically, Plaintiff's Amended Complaint alleges that Plaintiff's engineering team developed and obtained the three patents–the '931 Patent, the '342 Patent and the '896 Patent–in the years 2005, 2006 and 2007 (respectively), in order to assist Plaintiff in its business of installing collection systems on wind and solar energy projects.  (*Id*. at ¶¶ 10, 19.)  Moreover, Plaintiff's Amended Complaint alleges that Defendant Newton and Defendant CSI infringed each of these three patents through their manufacture, use, importation, sale and/or offer for sale

---

[6]    *See In re Papst Licensing GMBH & Co. KG Litigation*, 585 F. Supp.2d 32, 34-35, & n.2 (D. D.C. 2008) (dismissing patent claims due to plaintiff's having "pleaded itself out of court," after implicitly recognizing the continued vitality of Form 18 following *Twombly*); *cf. Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp.2d 298, 306-07 (S.D.N.Y. May 26, 2011) (recognizing point of law regarding pleading oneself out of court immediately after conceding the simple and brief pleading permitted by Form 18).

of certain laying boxes, before or after the cessation of Defendant Newton's employment with Plaintiff on February 18, 2011.  (*Id*. at ¶¶ 32, 132, 139, 146.)

Based on these factual allegations (among others), Plaintiff's Amended Complaint asserts the following patent infringement claims against both Defendant Newton and Defendant CSI: (1) claims of direct infringement; (2) claims of indirect infringement (including both induced and contributory infringement); and (3) claims of willful infringement.  (*Id*. at ¶¶ 132, 139, 146.)

Defendants Newton and CSI have moved to dismiss each of these patent infringement claims.  (Dkt. No. 40.)  For the reasons stated below, this motion is granted, and these claims are dismissed without prejudice.

### 1.    Claims of Direct Infringement

Generally, direct infringement occurs when a person or the person's agent personally "makes, uses, offers to sell, or sells any patented invention, within  the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).

### a.    Defendant Newton

Plaintiff asserts the bulk of its direct infringement claim against Defendant Newton in a single sentence, in which it also asserts an *indirect* infringement claim against Defendant Newton and intermingles both of those claims with claims against Defendant CSI: "Newton and CSI have infringed upon the '931[, '342 and '896] Patent[s] through the manufacture, use, importation, sale and/or offer for sale of the laying boxes either directly through acts of contributory infringement and or/inducement [sic] of infringement in violation of 35 U.S.C. § 271."  (Dkt. No. 39, at ¶¶ 132, 139, 146.)  For example, the first half of the sentence alleges

direct infringement by tracking the language of 35 U.S.C. § 271(a), while the second half of the sentence appears to allege indirect infringement–both contributory infringement and induced infringement.  (*Id*. at ¶¶ 132, 139, 146.)[7]  Moreover, by using the words "*the* manufacture, use, importation, sale and/or offer for sale" instead of the words "*their* manufacture, use, importation, sale and/or offer for sale," the reader is left to wonder whether both Defendants CSI and Newton engaged in the "manufacture, use, importation, sale and/or offer for sale" in question, or whether only Defendant CSI did so.  (*Id*.)

Granted, Plaintiff attempts to elaborate on its direct infringement claim against Defendant Newton by alleging, in two other paragraphs, that (1) Defendant Newton "transferred and divulged [Plaintiff's] patents … to CSI" and (2) "Defendant CSI began constructing laying boxes using the features of [Plaintiff's] patented laying boxes that, based on its final configuration, would violate [the patents]."  (Dkt. No. 39, at ¶¶ 65, 93.)  However, the first allegation is conspicuously silent as to any act by Defendant Newton of making, using, offering to sell, or selling the patents to Defendant CSI).  (*Id*. at ¶ 93.)  Moreover, the second allegation makes no mention of Defendant Newton, implicating only Defendant CSI.  (*Id*. at ¶ 65.)  Simply stated, even liberally construed, these allegations are insufficient to state a direct infringement claim against Defendant Newton: either Plaintiff has failed to clearly allege an element required by even Form 18, or it has actually pled himself out of court.

Because Plaintiff failed to sufficiently allege that Defendant Newton directly infringed its patents, its direct infringement claims against Defendant Newton are dismissed.  However,

---

[7]     The Court says "appears to allege" because the phrase "either directly through acts of contributory infringement and or/inducement [sic] of infringement") is confusing, even notwithstanding the typographical error.  (Dkt. No. 39, at ¶¶ 132, 139, 146.)

because the Court believes that Plaintiff might, through better pleading, be able to state an actionable claim of direct infringement against Defendant Newton, and because the Court finds this action to be in a relatively early stage, the Court dismiss these claims only without prejudice.

### b.    Defendant CSI

As it did with its direct infringement claim against Defendant Newton, Plaintiff asserts the bulk of its direct infringement claim against Defendant CSI in a single sentence, in which it also asserts an *indirect* infringement claim against Defendant CSI and intermingles both of those claims with claims against Defendant Newton: "CSI [has] infringed upon the '931[, '342 and '896] Patent[s] through the manufacture, use, importation, sale and/or offer for sale of the laying boxes either directly through acts of contributory infringement and or/inducement [sic] of infringement in violation of 35 U.S.C. § 271." (Dkt. No. 39, at ¶¶ 132, 139, 146.)

Granted, Plaintiff attempts to elaborate on its direct infringement claim against Defendant CSI by alleging, in a separate paragraph, that Defendant CSI  "began constructing laying boxes using features of [Plaintiff's] patented laying boxes that, based on its final configuration, would violate [the patents]." (Dkt. No. 39, at ¶ 65.)  However, even liberally construed, this allegation rather expressly states that the violation of the patent would occur only upon completion of the patented laying boxes, which had not yet occurred (at least as of the date of the Amended Complaint, September 23, 2011).  (*Id.*)  Such an allegation does not appear to be actionable.[8]  If

---

[8]        *See Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (dismissing defibrillator-component manufacturer's claim for future patent infringement alleging that accused product being modified in clinical trial would infringe patents once they were approved by FDA, because "[t]here was no certainty that the device when approved would be the same device that began clinical trials"); *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990) (dismissing patent claim as unripe where accused infringing ship hull would not be finished for at least nine months after complaint was filed); *cf.*

Plaintiff had alleged that Defendant CSI's "laying boxes" were in a late enough stage of development to render them *substantially similar* to Plaintiff's patented "laying boxes," then the Court might reach a different conclusion, under what is known as "the doctrine of equivalents."[9] However, Plaintiff has not so alleged.  In essence, Plaintiff has alleged only *attempted* infringement.[10]  Moreover, while Plaintiff has alleged that Defendant CSI has completed construction of "cup cutter segments," Plaintiff has not alleged that those "cup cutter segments" embody, or are related to, Plaintiff's '931, '342 and/or '896 Patents.[11]

Because Plaintiff failed to sufficiently allege that Defendant CSI directly infringed its patents, its direct infringement claims against Defendant CSI are dismissed.  However, because the Court believes that Plaintiff might, through better pleading, be able to state an actionable claim of direct infringement against Defendant CSI, and because the Court finds this action to be in a relatively early stage, the Court dismisses these claims only without prejudice.

---

*Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("Admittedly, infringement without a completed infringing embodiment is not the norm in patent law . . . .").

[9]    *Cf. Instuform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 780 F. Supp. 479, 491 (S.D. Oh. 1991) (finding no liability under the doctrine of equivalents because the accused device–a "cutter" apparatus used to cut conduit holes in liners installed in rehabilitated underground pipelines–did not equivalently have [1] an "outlet or exhaust directed toward the conduit-engaging position of the tool" as required by elements of patent claim, [2] a "duct" as required by elements of patent claim, [3] a "source of gas under pressure" as required by elements of patent claim, or [4] a "carriage" as required by elements of patent claim).

[10]    Generally, "'[a]ttempted [patent] infringement' does not create liability." *Lucent Tech. Inc. v. Gateway, Inc.*, 509 F. Supp.2d 912, 927, n.8 (S.D. Cal. 2007).

[11]    More specifically, Plaintiff has alleged that Defendant CSI has completed construction or manufacturing of "cup cutter segments" that "are virtually identical to [Plaintiff's] engineered and designed unique cup cutter segments."  (Dkt. No. 39, at ¶¶ 73, 74.) However, the Court finds that, even when it construes these allegations liberally, it does not construe these as relating to Plaintiff's '931, '342 and/or '896 Patents.  This is because, as alleged in the Amended Complaint, these "cup cutter segments" appear separate and apart from the patents described in Paragraph 19.  (Dkt. No. 39, at ¶¶ 19, 23, 73.)

### 2. Claims of Indirect Infringement and Willful Infringement

Because direct infringement is an element of indirect and willful infringement claims, if a direct infringement claim fails, so must the accompanying indirect and willful infringement claims.[12] As a result, because Plaintiff's direct infringement claims are dismissed without prejudice for failure to state a claim upon which relief can be granted, all of Plaintiff's other patent claims, including induced, contributory and willful infringement, are also dismissed without prejudice for failure to state a claim upon which relief can be granted.

### B. Plaintiff's Claims of Unauthorized Access of Protected Computer

The Second Claim of Plaintiff's Amended Complaint alleges that Defendant Newton and Defendant CSI have violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. (Dkt. No. 39, at ¶¶ 105-16.)  More specifically, Plaintiff's Amended Complaint alleges that Defendant Newton violated the CFAA when he accessed, copied, downloaded and/or electronically mailed certain files belonging to Plaintiff without consent or authority from Plaintiff.  (Dkt. No. 39, at ¶¶ 70, 83, 87-91, 106-15.)  Moreover, Plaintiff's Amended Complaint alleges that Defendant CSI is liable under the CFAA because it "encouraged, gave aid and support, [and] incentivized" Defendant Newton to violate the CFAA.  (*Id.* at ¶ 94.)

Defendants Newton and CSI have moved to dismiss each of these CFAA claims.  (Dkt.

---

[12]     *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 09-CV-1968, 2011 WL 3269583, at *5 (M.D. Fla. July 29, 2011) (willful); *Innovated Patents, L.L.C. v. Brain-Pad, Inc.*, 719 F. Supp.2d 379, 387 (D. Del. 2010) (willful); *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) (induced and willful); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990) (induced and contributory); *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (contributory); *Moleculon Research Corp. v. CBS, Inc.*, 872 F.2d 407, 410 (Fed. Cir. 1989) (induced); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) (induced and contributory); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1173 (Fed. Cir. 1986) (contributory); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526 (1972) (contributory); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) (contributory).

No. 40.)  For the reasons stated below, Plaintiff's CFAA claims against all Defendants survive Defendants' motion to dismiss.

### 1.    Defendant Newton

Plaintiff asserts three specific CFAA claims against Defendant Newton: (1) a violation of 18 U.S.C. § 1030(a)(2)(C); a violation of 18 U.S.C. § 1030(a)(4); and a violation of 18 U.S.C. § 1030(a)(5)(B)-(C).

To state a claim based on a violation of 18 U.S.C. § 1030(a)(2)(C), a plaintiff must allege facts plausibly suggesting that the defendant (1) intentionally, (2) accessed a computer, (3) without authorization or in excess of authorization, and (4) thereby obtained information from any protected computer.  18 U.S.C. § 1030(a)(2)(C).

To state a claim based on a violation of 18 U.S.C. § 1030(a)(4), a plaintiff must allege facts plausibly suggesting that the defendant (1) knowingly and with the intent to defraud, (2) accessed a computer, (3) that was protected, (4) without authorization or in excess of authorization, and (5) thereby obtained anything of value, unless the object of the fraud and the thing obtained consists solely of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.  18 U.S.C. § 1030(a)(4).

To state a claim based on a violation of 18 U.S.C. § 1030(a)(5)(B)-(C), a plaintiff must allege facts plausibly suggesting that the defendant (1) intentionally, (2) accessed a protected computer, (3) without authorization, (4) either (a) recklessly causing damage or (b) causing damage and loss.  18 U.S.C. § 1030(a)(5)(B)-(C).

Here, liberally construing Plaintiff's Amended Complaint, the Court finds that Plaintiff has alleged facts plausibly suggesting each element of each of these three CFAA claims against Defendant Newton.  (Dkt. No. 39, at ¶¶ 91, 106-115.)

Because the parties' arguments focus on whether Defendant Newton accessed Plaintiff's files without authorization or by exceeding his authorization, the Court's analysis will also focus on that issue.  (Dkt. No. 40, at 18-19; Dkt. No. 45, at 14-17; Dkt. No. 47, at 6-9.)  Plaintiff argues the Court should follow a line of district court cases from within the Second Circuit holding a defendant liable under the CFAA where he has accessed a protected computer with the intent to misappropriate or misuse information on the computer (even if he has accessed the computer with proper authorization).  *See, e.g,, Starwood Hotels & Resorts Worldwide, Inc. v. Hilton Hotels Corp.*, 09-CV-3862, 2010 U.S. Dist. LEXIS 71436, at *11-19 (S.D.N.Y. June 16, 2010); *Caylon v. Mizuho Sec. USA, Inc.*, 07-CV-2241, 2007 WL 2618658, at *1 (S.D.N.Y. July 24, 2007).[13]  Plaintiff urges the Court to follow these cases even though the CFAA does not mention an intent to misappropriate or misuse.  *See generally* 18 U.S.C. § 1030.

Defendant Newton, on the other hand, argue the Court should follow a line of district court cases from within the Second Circuit holding a defendant not liable under the CFAA if he has accessed a protected computer with proper authorization (even if he has accessed the computer with the sole intent to misappropriate information on the computer).  *See, e.g., U.S. v. Aleynikov*, 737 F. Supp.2d 173, 192 (S.D.N.Y. 2010); *Orbit One Commc'n Inc. v. Numerex Corp.*, 692 F. Supp.2d 373, 385 (S.D.N.Y. 2010); *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, 08-CV-3980, 2009 WL 2524864, at *5-6 (E.D.N.Y. Aug. 14, 2009).[14]  These cases suggest that the CFAA gives rise to a claim only where a defendant "hacks" into a protected computer to obtain or alter information it otherwise would not be able to access.  *Id.*

As an initial matter, the Court notes that, generally, it would appear that whether an

---

[13]        *See also Int'l Airport Ctr., LLC v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006).

[14]        *See also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134-35 (9th Cir. 2009).

14

employee had *authorization* to access various of an employer's computer files under the CFAA depends on the relevant agreement(s) between the employee and the employer, including any agreement(s) regarding the employee's use of the employer's information technology–and does not depend merely on whether the computer files accessed were electronically "locked" or "unlocked." For example, it is difficult for the Court to imagine how such an agreement would ever authorize any usage–including access–for the sole purpose of an unlawful activity such as theft of proprietary information.

Here, in its Amended Complaint, Plaintiff alleges as follows, in pertinent part: (1) access to all of Plaintiff's computers is strictly controlled through "various security measures, including passwords"; (2) "Newton's duties as project manager did not include a right to view or access company technical records"; (3) on February 14, 2011, Defendant Newton "downloaded thousands of digital files maintained on [Plaintiff's] computer network, particularly, substantial technical files proprietary to [Plaintiff], patents and trade secrets"; (4) "[a] number of the drawings files that Newton [accessed] contain the legend 'PROPRIETARY AND CONFIDENTIAL'"; (5) among the technical files downloaded were "form files and written standard operating procedures with each page bearing the admonition: 'Content is expressed property of PLC Trenching, LLC'"; and (6) among the technical files downloaded were files that, while not kept in electronically "locked" locations, were files in other employees' personal directories that were "nested" and labeled only "JOE L" and "SCOTT A." (Dkt. No. 39, at ¶¶ 83, 87, 89, 91, 106.)

Liberally construed (as all factual allegations must be),[15] these factual allegations plausibly suggest Defendant Newton intentionally accessed Plaintiff's technical files on

---

[15]    *See* Fed. R. Civ. 8(e) ("Pleadings must be construed so as to do justice.").

Plaintiff's protected computers *without authorization*–regardless of whether the technical files were electronically "locked" or "unlocked."  For these reasons, the Court finds Plaintiff has stated a CFAA claim against Defendant Newton.

### 2.     Defendant CSI

As stated above, Plaintiff's Amended Complaint alleges that Defendant CSI is liable under the CFAA because, "[u]pon information and belief, CSI is acting in privity, concert or participation with Newton in misappropriating [Plaintiff's] trade secrets and proprietary information."  (Dkt. No. 39, at ¶ 116.)  In support of this allegation, Plaintiff's Amended Complaint alleges, *inter alia*, that Defendant CSI  "encouraged, gave aid and support, [and] incentivized Newton to misappropriate [Plaintiff's] trade secret information and infringe on its patents for CSI's benefit."  (*Id*. at ¶ 94.)

Because the CFAA does not permit a claim premised on a theory of conspiracy liability,[16] the Court construes Plaintiff's CFAA claim against Defendant CSI as being premised on a theory of vicarious liability.  Whether an employer can be vicariously liable for an employee's violation of the CFAA is an issue of some dispute in district courts outside of the Second Circuit.[17]

---

[16]     *See Smartix Int'l Corp. v. Mastercard Int'l LLC*, 06-CV-5174, 2008 WL 4444554, at *1 n.2 (S.D.N.Y. Sept. 30, 2008) ("Congress has not provided for conspiracy liability under the CFAA."), *aff'd*, 355 F. App'x 464 (2d Cir. 2009).

[17]     *See Nat'l City Bank, N.A. v. Republic Mortg. Home Loans, LLC*, 09-CV-1550, 2010 WL 959925, at *5 (W.D. Wash. March 12, 2010) ("Whether a supervisor can be vicariously liable under the CFAA is an open question."); *compare Charles Schwab & Co., Inc. v. Carter*,  04-CV-7071, 2005 WL 2369815, at *5 (N.D. Ill. Sept. 27, 2005) ("Schwab alleges that Defendants affirmatively urged Carter to access Schwab's computer system beyond his authorization for their benefit.  Looking to the language of the CFAA, the CFAA's unequivocal purpose is to deter and punish those who intentionally access computer files and systems without authority and cause harm. . . .  Thus, if the allegations in the Complaint are true, imposing vicarious liability would further the CFAA's purpose. . . .  To hold otherwise would exempt a principal from liability when its agent improperly accessed a computer at the direction of the principal.") (internal quotation marks and citations omitted) *with Butera & Andrews v. Int'l Bus.*

However, the three district courts to address the issue within the Second Circuit have indicated their recognition of the availability of vicarious liability under the CFAA.[18]  After carefully considering the issue, the Court agrees with these three cases that an employer can be vicariously liable for a employee's violation of the CFAA.

To adequately allege vicarious liability under the CFAA, a plaintiff must allege facts that would plausibly suggest that the employer affirmatively urged or encouraged its employee to violate the CFAA.[19]

Granted, here, the allegation that Defendant CSI affirmatively urged or encouraged Defendant Newton to specifically violate the CFAA (i.e., through accessing Plaintiff's protected computers without authorization) depends on a certain amount of inference.  However, the Court finds that the inference is reasonable, not unreasonable, elevating the suggestion of actionable conduct above a level of mere speculation to one of plausibility.

_____

*Machines Corp.*, 456 F. Supp.2d 104, 112, n. 6 (D. D.C. 2006) ("[C]ourts in other jurisdictions have held that the Computer Fraud Act creates only a limited private right of action against the *violator*.") (internal quotation marks and citations omitted; emphasis in original).

[18]    *See Ipreo Holdings LLC v. Thomson Reuters Corp.*, 09-CV-8099, 2011 WL 855872, at *8 (S.D.N.Y. Mar. 8, 2011) (Jones, J.) (implicitly agreeing with the parties that "the CFAA allows for vicarious liability only when its violation was affirmatively urged or otherwise by the employer"); *Garland-Sash v. Lewis,* 05-CV-6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007) (Pauley, J.) ("The Court is mindful that in some circumstances, courts have recognized the potential for vicarious liability under [the CFAA] . . . .  However, in each of those cases the defendants were alleged to have directed the wrongful conduct of the individual 'violator' for their own benefit. . . .  This case, in contrast, does not involve any allegation that the BOP Officials directed or encouraged Lewis' wrongdoing, much less that they benefited from it . . . .") (citations omitted), *aff'd in part, vacated in part on other grounds*, 348 F. App'x 639 (2d Cir. Oct. 8, 2009); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp.2d 468, 472 (S.D.N.Y. 2004) (Cedarbaum, J.) ("The case defendants cite to support their argument that a corporation cannot be found liable under the CFAA for the actions of its employees is inapposite. . . .  Here, Schatzberg and Finley are alleged to have acted at the direction of Sark-USA and Sarkuysan.").

[19]    *See*, *supra*, notes 17 and 18 of this Decision and Order (citing cases).

For example, Plaintiff alleges as follows, in part: (1) on February 13, 2011, Defendant CSI hired Defendant Newton, and gave him a week to complete his work with Plaintiff as a "field project manager," and to obtain information about cup cutter segments modifications and modifications to a Rivard trencher (which was used by both Defendant CSI and its direct competitor, Plaintiff), before he started work at CSI project sites on February 21, 2011; (2) that same day, Defendant CSI received an email message from Defendant Newton stating that (a) "per our conversation this week-end I want you to know I will be working to get info for the cup cutter segments that we will be hopefully using on the Kansas project," which segments Defendant CSI knew or should have known were at the time were used only by Plaintiff, and (b) he "will do research" on another cup cutter segment modification; (3) on February 14, 2011, Defendant Newton downloaded the thousands of digital files referenced above in Part III.B.1. of this Decision and Order; (4) on February 16, 2011, Defendant CSI notified Newton that he would be "assigned to a project encountering 'soft clay and may require cup cutter . . . modification to segments etc.'"; (5) that same day, Defendant CSI directed Defendant Newton to schedule a conference call with other CSI employees to get the segment modifications "moving in the right direction," and also notified various CSI employees that Newton was actively seeking information concerning cup cutter modifications that CSI otherwise did not have; (6) at the time, Defendant CSI "knew or should have known that Newton [who had been merely a project manager at Plaintiff's business and who was still employed by Plaintiff, with access to Plaintiff's files] would attempt to get the information from [Plaintiff]"; (7) on February 17, 2011, Defendant CSI "agreed to provide Newton with a financial bonus [of a type never before provided to a CSI employee] based on field production below CSI's budgeted costs," a "key factor" of which was "improving trenching efficiency"; (8) that same day, Defendant CSI

authorized the purchased of a new laptop computer and an "iPhone" for Defendant Newton, and

provided Newton with access to its electronic mail system; and (9) also that same day, Defendant

Newton took, without Plaintiff's knowledge or consent, a photograph of Plaintiff's cup cutter

segments, and emailed other photographs of [Plaintiff's] equipment and information relating to

[Plaintiff's] equipment rental rates from his [company] email to his personal email address."  (*Id.*

at ¶¶ 32, 37-42, 44, 46, 47, 49-53, 56, 57, 59, 60, 83.)

Liberally construing these factual allegations, the Court finds that they adequately allege

vicarious liability under the CFAA.  For example, the Court finds that Plaintiff has alleged facts

plausibly suggesting that Defendant CSI affirmatively urged Defendant Newton to obtain

technical files on cup cutter segments, because it (1) informed him, before it hired him on

February 13, 2011, that he would be working (on "the Kansas project") with cup cutter

segments, which at the time were used only by Plaintiff, and it discussed with him the prospect

of his "get[ting] info for [those] cup cutter segments," (2) agreed on February 17, 2011, to

provide Defendant Newton with "a financial bonus based on field production below CSI's

budgeted costs," a "key factor" of which was "improving trenching efficiency," and (3)

authorized his purchase of an "iPhone" and a new laptop computer on the very same day on

which he took a photograph of Plaintiff's cup cutter segments and emailed it to his personal

email account.[20]  In addition, the Court finds that Plaintiff has alleged facts plausibly suggesting

that Defendant CSI knew, or reasonably should have known, that Plaintiff (who worked merely

---

[20]      *Cf. Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564, 567-68 (D. Md. 2004)
("It would be a different case if Dr. Jones had acted as NSU's agent in accessing information on
RMA's computers. For example, if NSU had told Dr. Jones to send e-mails to the defendant
containing various trade secrets and proprietary information belonging to the plaintiff, . . . , then
the fact that the information was transferred first to Dr. Jones's computer might not insulate NSU
from liability. . . .") [internal quotation marks and citations omitted].

as a "field project manager" with Plaintiff) would have to access Plaintiff's computer system (either without authorization or in excess of his authorization) during his remaining week of employment with Plaintiff, in order to do the "research" on cup cutter segments that he had repeatedly promised Defendant CSI before February 14, 2011.

For all of these reasons, Plaintiff's CFAA claims against all Defendants survive Defendants' motion to dismiss. However, the Court notes that, should Plaintiff chose to request leave to file a Second Amended Complaint with regard to its patent claims, it is free to also request leave to amend this claim, in order to reduce the reliance on inference necessary to reach a conclusion that Plaintiff has stated a CFAA claim against Defendant CSI.

### C.     Plaintiff's Claim of Breach of Fiduciary Duty

The Third Claim of Plaintiff's Amended Complaint alleges that Defendant Newton breached his common law fiduciary duty to Plaintiff by "utiliz[ing] confidential patent, trade, secret and proprietary information he obtained exclusively through his employment with [Plaintiff] for his own personal benefit and against the interests of [Plaintiff]." (Dkt. No. 39, at ¶ 121.)

Defendants argue that, to the extent this claim is premised on Plaintiff's allegations of patent infringement, the claim must be dismissed as preempted by the Patent Act. (Dkt. No. 40, Attach. 1, at 21-22.) In response, Plaintiff argues that preemption has not occurred because, to the extent its breach-of-fiduciary duty claim references "confidential patent . . . information," that breach-of-fiduciary-duty claim contains an extra element not present in the patent infringement claim, rendering the breach-of-fiduciary-duty claim *qualitatively different* from the patent infringement claim. (Dkt. No. 45, at 17-19.) While Plaintiff's memorandum of law does not expressly explain this extra element, Plaintiff's memorandum of law appears to argue that

Plaintiff's breach-of-fiduciary-duty claim is based on Defendant Newton's *misappropriation* (and disclosure) of Plaintiff's confidential patent information while Plaintiff's patent-infringement claim (against Defendant Newton) is based on his *use* of one or more of Plaintiff's patents.  (*Id.*)  In reply, Defendants argue that the two claims in question are not, in fact, qualitatively different.  (Dkt. No. 47, at 10.)

After carefully considering the matter, the Court must disagree with Plaintiff that, even liberally construed, the relevant part of its breach-of-fiduciary-duty claim is based on Defendant Newton's *misappropriation* (and disclosure) of Plaintiff's confidential patent information, while Plaintiff's patent-infringement claim (against Defendant Newton) is based on his *use* of one or more of Plaintiff's patents.[21]  Granted, Plaintiff's breach-of-fiduciary-duty claim uses the word "obtained" in a context that renders it synonymous in meaning with the word "misappropriate." (Dkt. No. 39, at ¶ 121.)  However, grammatically, Plaintiff's use of the word "obtained" merely describes the information with which Defendant Newton is alleged to have done something wrongful.  (*Id.*)  The wrongful thing that Defendant Newton did with this information is to "utilize[]" it for his own personal benefit and against the interests of Plaintiff: this appears to be the thrust–if not the entirety–of Plaintiff's breach-of-fiduciary-duty claim.  (*Id.*)  The word "utilize[]" is remarkably similar to the word "use[]," found in the elements of a patent-infringement claim under 35 U.S.C. § 271(a).  *See*, *supra*, Part III.A.1. of this Decision and

---

[21]     The Court notes that, to state a claim for breach of fiduciary duty under New York law, a plaintiff must allege (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.  *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 777 (N.Y. App. Div., 2d Dept. 2010) (citing *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 [N.Y. App. Div., 2d Dept. 2007]).  "New York law establishes that an employee-employer relationship is fiduciary."  *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 548 (E.D.N.Y. 1987) (citing *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 294-95 [N.Y. 1977]), *accord, Fairfield Fin. Mortg. Group, Inc. v. Luca*, 584 F. Supp.2d 479, 485 (E.D.N.Y. 2008).

Order.  Finally, the Court notes that, without additional factual allegations, it is unable to discern a material difference between "patent . . . information" and the patents themselves, under the circumstances.

As a result, the Court accept Defendants' preemption argument: to the extent that Plaintiff's breach-of-fiduciary-duty-claim against Defendant Newton is based on his "utiliz[ation]" of Plaintiff's "patent . . . information," that claim is dismissed.  (In the alternative, the Court finds that, because Plaintiff's patent-infringement claims against Defendant Newton have already been dismissed, any breach-of-fiduciary-duty claims premised on those patent-infringement claims must also be dismissed.)

However, because the Court believes that Plaintiff might, through better pleading, be able to state an actionable breach-of-fiduciary-duty claim against Defendant Newton based on his misappropriation and/or disclosure of Plaintiff's "patent . . . information," and because the Court finds this action to be in a relatively early stage, the Court dismisses the portion of the claim in question only without prejudice.

Finally, the Court notes that surviving Defendants' motion to dismiss are those portions of Plaintiff's breach-of-fiduciary-duty claim against Defendant Newton based on his "utiliz[ation]" of "confidential . . . trade secret and proprietary information."  (Dkt. No. 39, at ¶ 121.)

**D.    Plaintiff's Claims of Unfair Competition**

The Fourth Claim of Plaintiff's Amended Complaint alleges that Defendants Newton and CSI have "engaged in conduct intended to undermine, destroy and misappropriate the business of [Plaintiff] by using [Plaintiff's] confidential business information, proprietary materials, patents and trade secrets to compete unfairly with [Plaintiff] in violation of common law."  (Dkt. No. 39, at ¶ 127.)

Again, Defendants argue that, to the extent this claim is premised on Plaintiff's allegations of patent infringement, the claim must be dismissed as preempted by the Patent Act. (Dkt. No. 40, Attach. 1, at 21-22.)  In response, Plaintiff argues that preemption has not occurred because, to the extent its unfair-competition claim references "patents," that unfair-competition claim contains an extra element not present in the patent infringement claim, rendering the unfair-competition claim *qualitatively different* from the patent infringement claim.  (Dkt. No. 45, at 17-19.)  This is because, Plaintiff appears to argue, its unfair-competition claim must allege, and does allege, a "misappropriation" by Defendants–an act quite different from the "use" required to state a claim of patent infringement under 35 U.S.C. § 271(a).  (*Id.*)  In reply, Defendants argue that the two claims in question are not, in fact, qualitatively different.  (Dkt. No. 47, at 10.)

After carefully considering the matter, the Court must again disagree with Plaintiff.[22] The "misappropriat[ion]" alleged in Plaintiff's unfair-competition claim is misappropriation of its "business" (not patents).  (Dkt. No. 39, at ¶ 127.)  The alleged wrongdoing by Defendants with regard to Plaintiff's "patents," in its unfair-competition claim, is Defendants' "use[]" of those "patents" to cause the aforementioned "misappropriat[ion]" of Plaintiff's "business."  (*Id.*) This allegation of a wrongful "use" of Plaintiff's "patents" is extremely similar–if not virtually identical–to Plaintiff's claim of a wrongful "use[]" of Plaintiff's "patented invention[s]" under 35 U.S.C. § 271(a).

---

[22]     The Court notes that, to state a claim of unfair competition under New York law, a plaintiff must allege that the defendant "misappropriated the plaintiff's labors, skills, expenditures or goodwill and displayed some element of bad faith in doing so." *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692 (N.Y. App. Div., 2d Dept 2007); *Greenblatt v. Prescription Plan Srvs. Corp.*, 783 F. Supp. 814, 825 (S.D.N.Y. 1992) (noting that, to state a claim for unfair competition, the plaintiff must allege "unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor, and talent").

In support of its argument to the contrary, Plaintiff cites *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992), for the proposition that "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets" satisfy the "extra element" test. (Dkt. No. 45, at 18.) Setting aside the fact that *Altai* addressed pre-emption by the Copyright Act (not the Patent Act), *Altai* is clearly distinguishable from this case, which does not involve a challenge to an unfair-competition claim based upon a breach of a confidential relationship, a breach of fiduciary duty and trade secrets. Rather, the case before the Court involves a challenge to that portion of an unfair-competition claim alleging that Defendants wrongfully "use[d]" Plaintiff's "patents" to cause a "misappropriat[ion]" of Plaintiff's "business."

As a result, the Court accept Defendants' preemption argument: to the extent that Plaintiff's unfair-competition claims against Defendants are based on their "use[]" of Plaintiff's "patents," that claim is dismissed. (In the alternative, the Court finds that, because Plaintiff's patent-infringement claims against Defendant Newton have already been dismissed, any unfair-competition claims premised on those patent-infringement claims must also be dismissed.)

However, because the Court believes that Plaintiff might, through better pleading, be able to state actionable unfair-competition claims against Defendants based on their misappropriation of Plaintiff's labors, skills, expenditures or goodwill in connection with its patents, and because the Court finds this action to be in a relatively early stage, the Court dismisses the portion of the claim in question only without prejudice.

Finally, the Court notes that surviving Defendants' motion to dismiss are those portions of Plaintiff's unfair-competition claims against Defendants based on their "misappropriat[ion]" of Plaintiff's business by "using [Plaintiff's] confidential business information, proprietary materials, . . . and trade secrets to compete unfairly with [Plaintiff] . . . ." (Dkt. No. 39, at ¶ 121.)

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 40) is **<u>GRANTED</u> in part** and

**<u>DENIED</u> in part** in the following respects:

(1) The following claims are **<u>DISMISSED</u> without prejudice**:

    (a) Plaintiff's claims of patent infringement against all Defendants;

    (b) Plaintiff's claim of breach of fiduciary duty against Defendant Newton to the

extent that claim based on his "utiliz[ation]" of Plaintiff's "patent . . .

information";

    (c) Plaintiff's claims of unfair competition against all Defendants to the extent

those claims are based on their "use[]" of Plaintiff's "patents"; and

(2) The following claims survive Defendants' motion to dismiss:

    (a) Plaintiff's claims against all Defendants for misappropriation of trade secrets

under New York common law;

    (b) Plaintiff's claim against all Defendants for unauthorized access of a protected

computer under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030;

    (c) Plaintiff's claim against Defendant Newton for breach of fiduciary duty under

New York common law, based on his "utiliz[ation]" of "confidential . . . trade

secret and proprietary information"; and

    (d) Plaintiff's claims against all Defendants for unfair competition under New

York common law, based on their "misappropriat[ion]" of Plaintiff's business by

"using [Plaintiff's] confidential business information, proprietary materials, . . .

and trade secrets to compete unfairly with [Plaintiff] . . . ."

Dated: December 6, 2011
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

25