UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PLC TRENCHING CO., LLC,

                    Plaintiff,          6:11-CV-0515
                                          (GTS/DEP)
v.

GARY NEWTON, JR.; CABLE SYS.
INSTALLATION LLC; and CABLE SYS.
INSTALLATIONS CORP.,

                      Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCHNADER HARRISON SEGAL & LEWIS LLP<br>  Counsel for Plaintiff<br>140 Broadway, Suite 3100<br>New York, NY 10005 | CYNTHIA A. MURRAY, ESQ.<br>THEODORE L. HECHT, ESQ. |
| BOND, SCHOENECK & KING PLLC<br>  Counsel for Defendant Gary Newton, Jr.<br>350 Linden Oaks, Suite 310<br>Rochester, NY 14625 | BRIAN LAUDADIO, ESQ.<br>GREGORY J. MCDONALD, ESQ. |
| FRENCH, ALCOTT PLLC<br>  Counsel for Defendant Gary Newton, Jr.<br>300 South State Street<br>Syracuse, NY 13202 | DANIEL J. FRENCH, ESQ. |
| HISCOCK & BARCLAY<br>  Counsel for Defendant Gary Newton, Jr.<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202 | GABRIEL M. NUGENT, ESQ. |
| LeCLAIR RYAN<br>  Counsel for Corporate Defendants<br>290 Linden Oaks, Suite 310<br>Rochester, NY 14625 | ANDREW P. ZAPPIA, ESQ.<br>WENDELL W. HARRIS, ESQ.<br>MICHAEL J. CROSNICKER, ESQ. |

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this misappropriation-of-trade-secrets action, is a motion, filed by PLC Trenching Co., LLC ("Plaintiff") against Gary Newton, Jr., Cable System Installation LLC, and Cable System Installations Corp. ("Defendants"), for an order of civil contempt and the imposition of sanctions, attorney's fees and costs against Defendants. (Dkt. No. 95.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

### I. RELEVANT BACKGROUND

Because the parties have demonstrated, in their motion papers and at the Order-to-Show-Cause Hearing dated March 26, 2012 ("Order-to-Show-Cause Hearing"), an adequate understanding of the claims, facts and procedural history of this case, the Court will not recite that information in this Decision and Order, which is intended primarily for the review of the parties.

### II. GOVERNING LEGAL STANDARD

Again, because the parties have demonstrated, in their motion papers, an adequate understanding of the legal standard governing a motion for civil contempt, the Court will not recite that standard in this Decision and Order, which is (again) intended primarily for the review of the parties.

### III. ANALYSIS

#### A. Defendants' Use of a Fourth Set of Cup Cutter Segments

Plaintiff argues that Defendants violated the Court's Temporary Restraining Order issued on May 10, 2011 ("TRO"), by failing to turn over a fourth set of cup cutter segments to Plaintiff until December 28, 2011, and by using the fourth set of cup cutter segments after the issuance of

(and in violation of) the TRO. (Dkt. No. 95, Attach. 13, at 10-16, 22-24 [Plf.'s Memo. of Law].) As a result, Plaintiff requests that the Court issue sanctions against Defendants in the amount of $750,000 (resulting from the ability to excavate approximately 100,000 feet of trench at a profit of approximately $7.50 per foot of trench–resulting from an estimated 100% profit on the unit price of $7.50 per foot of trench–multiplied by a 100% production benefit), in addition to attorney's fees incurred by Plaintiff for having to file and argue its motion. (Dkt. No. 95, Attach. 13, at 26-27; Dkt. No. 95, Attach. 1, at ¶ 33 [Decl. of Lopata].)

In their papers, and at the Order-to-Show-Cause Hearing, Defendants admit that they used a fourth set of cup cutter segments at its Webberville, Texas, work site after the Court issued the TRO, but argue that the use was inadvertent and limited to that site. (*See, e.g.,* Dkt. No. 106, at 9-10 [Defs.' Opp. Memo. of Law]; Dkt. No. 115 [Defs.' Suppl. Letter-Brief].) As for the amount of sanctions requested by Plaintiff, in their post-hearing papers, Defendants argue that Plaintiff overestimates the financial benefit derived by Defendants from their use of the fourth set of cup cutters at Webberville, asserting that the financial benefit was only $50,000 (resulting from the ability to excavate at most 80,000 feet of trench at a profit of approximately $1.25 per foot of trench–resulting from an estimated 20% profit on the unit price of $6.28 per foot of trench–multiplied by at most a 50% production benefit). (Dkt. No. 115 [Defs.' Suppl. Letter-Brief]; Dkt. No. 116 [Decl. of Singh]; Dkt. No. 117 [Second Decl. of O'Donnell].)[1] As for the attorney's fees requested by Plaintiff, at the Order-to-Show-Cause Hearing and in their

---

[1] Moreover, Defendants argue that any such award of sanctions should (1) be limited to direct injury suffered by Plaintiff (and not expanded to any benefit derived by Defendants), and (2) offset any future damage award given to Plaintiff on its trade secret misappropriation claim. (Dkt. No. 115 [Defs.' Suppl. Letter-Brief].)

post-hearing papers, Defendants do not contest attorney's fees to the extent they relate to Plaintiff having to file and argue this aspect of its motion; however, Defendants do contest attorney's fees as they relate to the remaining three aspects of Plaintiff's motion (i.e., spoliation of evidence, the forensic computer examination, and the failure to pay for site-inspection costs). (Dkt. No. 115 [Defs.' Suppl. Letter-Brief].)

In its post-hearing papers, Plaintiff argues that Defendants' late-blossoming evidence of the financial benefit derived by them from their use of the fourth set of cup cutters at Webberville should be given little, if any, weight, because that evidence (1) has deprived Plaintiff of an opportunity to cross-examine Defendants' declarants at the Order-to-Show-Cause Hearing, and (2) is uncorroborated by any documentary evidence (e.g., job reports, contracts or company records). (Dkt. No. 118 [Plf.'s Suppl. Letter-Brief].)

After carefully considering the matter (including the parties' motion papers and their arguments at the Order-to-Show-Cause Hearing), the Court agrees that sanctions and an award of attorney's fees are warranted, for the reasons stated by Plaintiff in its motion papers. (*See, e.g.,* Dkt. No. 95, Attach. 13, at 10-16, 22-24, 26-27 [Plf.'s Memo. of Law].) As for the amount of the sanctions, the Court finds that sanctions in the amount of $406,800 are warranted,[2] to be paid as follows: (1) sanctions in the amount of $20,340, to be paid by Defendant Newton to Plaintiff;[3]

---

[2] The Court calculates the amount of sanctions as follows: 80,000 feet of trench at a profit of $5.65 per foot of trench (resulting from a 90% profit on the unit price of $6.28 per foot of trench), multiplied by a 90% production benefit. This calculation draws from the what the Court finds to be the most reasonable aspects of the evidence adduced by the parties.

[3] The Court finds that, based on all the evidence adduced thus far in this case, it is entirely reasonable to make Defendant Newton personally liable for 5% of the total sanctions awarded to Plaintiff. For example, Defendant Newton adduced affidavits in this action stating that, in addition to receiving an annual salary from Defendant CSI, he received "incentive

and (2) sanctions in the remaining amount of $386,460, to be paid by the two corporate Defendants (jointly and severally) to Plaintiff. As for the amount of attorney's fees, the Court finds that reasonable attorney's fees and costs are warranted in an amount to be shown by Plaintiff within thirty days (and approved by the Court), to be thereafter paid by the three Defendants (jointly and severally) to Plaintiff, for having to file and argue this aspect of its motion.

The Court notes that it declines Defendants' offer to submit to the Court, for *in camera* review, "a bid sheet and estimate sheet for the Webberville job, which provides details on the estimates [of a unit price $6.28 per foot of trench and a profit margin of 20%]." (Dkt. No. 116, at ¶¶ 5, 18 [Decl. of Singh].) Setting aside the fact that the relative lack of utility of the bid sheet and estimate sheet in determining the *actual* profit margin (e.g., as compared to job reports, trenching logs, company financial records, etc.), the time to submit that information was when Defendants submitted their post-hearing letter-brief, or ideally before the Order-to-Show-Cause Hearing (so that Plaintiff could cross-examined Defendants' declarants). Furthermore, Defendants have not shown cause as to why the allegedly "highly confidential" information in those documents could not have been redacted. (*Id.*)

---

compensation" in a certain percentage of a project's total budget for completing the project either on-time, or early, and under budget. (Dkt. No. 27, at ¶ 21 [First Decl. of Newton, stating, "I was made an offer of employment by CSI after our meeting and additional discussions regarding salary, incentives, benefits and possible other team members to work with me."]; Dkt. No. 60, at ¶ 4 [Second Decl. of Newton, stating that, "for projects completed on time and budget, I would receive an incentive compensation of 0.005% of the total budget, and for projects completed early and under budget by 20%, I would receive an incentive compensation that would be set on a per-project basis."].) Moreover, Plaintiff has adduced evidence that Defendant Newton's annual adjusted salary at Defendant CSI is between $100,000 and $150,000. (Dkt. No. 8, at ¶ 32 [Decl. of Critelli]; Dkt. No. 49, Attach. 1-2 [Exs. 1-2 to Decl. of Lopata].)

The Court notes also that the above-described award of sanctions represents what it finds to be the direct injury suffered by Plaintiff, which has been placed at a comparative disadvantage by its "primary competitor" in the marketplace.  (*See, e.g.,* Dkt. No. 8, at ¶¶ 20, 22-24, 36 [Decl. of Critelli]; Dkt. No. 80, at 19 [attaching page "69" of Tr. of Prelim. Injunct. Hrg.].)  In the alternative, the above-described award of sanctions represents what is necessary to secure future compliance with the Court's Preliminary Injunction in this action.

Finally, the Court notes that the above-described sanctions shall be paid forthwith.  The issue of the credit requested by Defendant (Dkt. No. 115, at 3-4) will be revisited when a final Judgment is issued, should that issue arise at that time.

      **B.**     **Spoliation of Evidence**

Plaintiff argues that Defendants violated the Court's Preliminary Injunction dated December 12, 2011 ("Preliminary Injunction"), when they removed plows from the "screen" laying boxes and auger mechanisms from the "select fill" laying boxes.  (Dkt. No. 95, Attach. 13 at 16-17, 21-22 [Plf.'s Memo. of Law].)  In their pre-hearing papers, and at the Order-to-Show-Cause Hearing, Defendants argue that the removal of the plows and auger mechanisms from the laying boxes was Defendants' effort to avoid infringement and comply with the Preliminary Injunction.  (Dkt. No. 106, at 16-19 [Defs.' Opp. Memo. of Law].)  Moreover, in their post-hearing letter-brief, Defendants argues as follows: (1) one of the photographs relied on by Plaintiff in support of its argument on this issue does not depict a laying box used by Defendants after April 2011, but simply a spare part; and (2) Plaintiff should be required to advise Defendants of what features in Defendants' laying boxes embody Plaintiff's trade secrets (so that Defendants can remove them), rather than permitted to seize the laying boxes in their entirety.  (Dkt. No. 115 [Defs.' Suppl. Letter-Brief.)

After carefully considering the matter (including the parties' motion papers and their arguments at the Order-to-Show-Cause Hearing), the Court agrees that Defendants wilfully violated the Preliminary Injunction in this regard, for the reasons stated by Plaintiff in its motion papers. (*See, e.g.*, Dkt. No. 95, Attach. 13, at 16-17, 21-22 [Plf.'s Memo. of Law]; Dkt. No. 95, Attach. 1, at ¶¶ 24-25, 30 [Decl. of Lopata]; Dkt. No. 80, at 64-65 [attaching pages "114" and "115" of Tr. of Prelim. Injunct. Hrg.].) The Court notes that the Preliminary Injunction clearly ordered, in pertinent part, "that *Defendants shall return all* copies of digital computer files, *physical* and other representational or intellectual *embodiments of Plainitff's patents, trade secrets and proprietary information* (*including,* but not limited to, information regarding cup cutter segments, *laying boxes* and dozer track modifications for the Rivard trencher) obtained from Plaintiff and *in Defendants' possession*." (Dkt. No. 72, at 24 [Preliminary Injunction] [emphasis added].) The Court notes also that, while an injunction requiring Defendants to forfeit the laying boxes in their entirety may appear strict, it is entirely necessary and appropriate given (1) Plaintiff's need to retain the secrecy and confidentiality of certain information regarding its laying boxes, and (2) Defendants' incorrigible conduct thus far.

While the Court finds that monetary sanctions for this violation are not necessary at this time, the Court finds that attorney's fees and costs are warranted in an amount to be shown by Plaintiff within thirty days (and approved by the Court), to be thereafter paid by three Defendants (jointly and severally) to Plaintiff, for having to file and argue this aspect of its motion.

In addition, all three Defendants are ordered to do the following: (1) not adjust, alter, disassemble, remove any portion of, conceal any portion of and/or destroy any portion of any of their laying boxes that represent, embody and/or infringe on Plaintiff's patents, trade secrets,

and/or proprietary information; (2) immediately deliver (at Defendants' expense) any such laying boxes in their entirety to Plaintiff; and (3) permit Plaintiff to monitor Defendants' compliance with this directive (at Defendants' expense) by inspecting any and all of Defendants' laying boxes on an announced or unannounced basis, and confiscating any laying boxes found by Plaintiff to not be in compliance with this directive.

Finally, to ensure that the enforcement of the preliminary injunction remains fair and reasonable at all times, Plaintiff is directed to advise the Court in writing, within thirty days, as to whether it consents (and, if not, why it does not consent) to a process in which it shall (1) remove and retain the offending portions of the laying boxes, and (2) return the unoffending portions to Defendants (at Defendants' expense) within thirty days of Plaintiff's receipt of the laying boxes.

### C.     Forensic Computer Examination

Plaintiff argues that Defendants have violated the Court's Preliminary Injunction by impeding it from conducting a forensic computer examination.  (Dkt. No. 95, Attach. 13, at 18-19, 24-25 [Plf.'s Memo. of Law].)  In their pre-hearing papers, and at the Order-to-Show-Cause Hearing, Defendants argue that they are prepared to allow Plaintiff to conduct a forensic examination of its computer systems subject to a protective order prohibiting Plaintiff's employees from exposure to, and review of, materials relating to Defendants' bidding information, personnel files, and commercially competitive information.  (Dkt. No. 106, at 12-16 [Defs.' Opp. Memo. of Law].)  In response, at the Order-to-Show-Cause Hearing, Plaintiff (1) did not object to Defendant's proposed protective order, and (2) agreed that it did not seek access to the materials relating to Defendants' bidding information, personnel files, and commercially competitive information.  Following the Order-to-Show-Cause Hearing, Defendants advised the

Court as follows:

> [O]n March 26, 2012, CSI counsel advised PLC counsel that PLC's vender could begin the process of imaging CSI's computer files the week of April 2, 2012. Discussions are proceeding to coordinate that forensic review. Defendants and PLC have not yet reached agreement on a protective order, but CSI does not want any delay in the imaging process, so that imaging will commence while the parties attempt to reach agreement on protective order terms.

(Dkt. No. 115 [Defs.' Suppl. Letter-Brief].)

After carefully considering the matter (including the parties' motion papers and their arguments at the Order-to-Show-Cause Hearing), the Court denies without prejudice Plaintiff's motion to the extent that it seeks monetary sanctions and/or attorney's fees with regard to the above-described forensic computer examination. Instead, the Court (1) deems as withdrawn without prejudice Defendants' letter-motion of March 23, 2012, requesting the entry of a Protective Order (Dkt. No. 110), and (2) orders Defendants to work in good-faith with Plaintiff toward the end of expeditiously arranging the forensic computer examination in question.

### D. Defendants' Refusal to Pay Plaintiff's Site-Inspection Costs

Plaintiff argues that Defendants have violated the Preliminary Injunction by refusing to reimburse Plaintiff for the costs it incurred for conducting periodic inspections at Defendants' project sites. (Dkt. No. 95, Attach. 13, at 17-18 [Plf.'s Memo. of Law].) In their pre-hearing papers, and at the Order-to-Show-Cause Hearing, Defendants (1) conceded that they do not dispute some of the costs in question, and (2) argue that they are prepared to reimburse Plaintiff for the other (disputed) costs once they receive further documentation regarding those costs. (Dkt. No. 106, at 21-23 [Defs.' Opp. Memo. of Law].) Following the Order-to-Show-Cause Hearing, Defendants advised the Court that they have effectively withdrawn their dispute regarding certain of Plaintiff's costs, and have paid the full amount requested by Plaintiff. (Dkt.

9

No. 115 [Defs.' Suppl. Letter-Brief].)

After carefully considering the matter (including the parties' motion papers and their arguments at the Order-to-Show-Cause Hearing), the Court agrees that Defendants wilfully violated the Preliminary Injunction in this regard, for the reasons stated by Plaintiff in its motion papers. (*See, e.g.,* Dkt. No. 95, Attach. 13, at 17-18, 25-27 [Plf.'s Memo. of Law]; Dkt. No. 95, Attach. 1, at ¶ 32 [Decl. of Lopata].)

While the Court finds that monetary sanctions for this violation are not necessary at this time, the Court finds that attorney's fees and costs are warranted in an amount to be shown by Plaintiff within thirty days (and approved by the Court), to be thereafter paid by the three Defendants (jointly and severally) to Plaintiff, for having to file and argue this aspect of its motion.  In addition, the two corporate Defendants are ordered to (1) pay all future undisputed costs immediately, and (2) work in good faith with Plaintiff to expeditiously and amicably resolve any such future disputed costs.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for an order of civil contempt and the imposition of sanctions, attorney's fees and costs against Defendants (Dkt. No. 95) is **GRANTED in part** and **DENIED in part**, in the following respects:

(1) Defendant Newton shall pay **TWENTY THOUSAND THREE HUNDRED FORTY DOLLARS ($20,340)** in sanctions to Plaintiff;

(2) The two corporate Defendants (on a joint-and-several-liability basis) shall pay **THREE HUNDRED EIGHTY-SIX THOUSAND FOUR HUNDRED SIXTY DOLLARS ($386,460)** in sanctions to Plaintiff;

(3)   All three Defendants shall do the following: (i) not adjust, alter, disassemble, remove any portion of, conceal any portion of and/or destroy any portion of any of their laying boxes that represent, embody and/or infringe on Plaintiff's patents, trade secrets, and/or proprietary information; (ii) immediately deliver (at Defendants' expense) any such laying boxes in their entirety to Plaintiff; and (iii) permit Plaintiff to monitor Defendants' compliance with this directive (at Defendants' expense) by inspecting any and all of Defendants' laying boxes on an announced or unannounced basis, and confiscating any laying boxes found by Plaintiff to not be in compliance with this directive;

(4)   Plaintiff shall advise the Court in writing, within **THIRTY (30) DAYS** of the date of this Decision and Order, as to whether Plaintiff consents (and, if not, why it does not consent) to a process in which it shall (1) remove and retain the offending portions of the laying boxes discussed above in this Decision and Order, and (2) return the unoffending portions to Defendants (at Defendants' expense) within thirty days of Plaintiff's receipt of the laying boxes;

(5)   The Clerk of the Court shall amend the docket sheet to reflect that Defendants' letter-motion of March 23, 2012, requesting the entry of a Protective Order (Dkt. No. 110), has been **WITHDRAWN without prejudice** by Defendants;

(6)   Defendants shall work in good-faith with Plaintiff toward the end of expeditiously arranging the forensic computer examination discussed above in this Decision and Order;

(7)   All three Defendants (on a joint-and-several-liability basis) shall (i) immediately pay all future undisputed costs of site inspections by Plaintiff, and (ii) work in

good faith with Plaintiff to expeditiously and amicably resolve any such future disputed costs;

(8)   All three Defendants (on a joint-and-several-liability basis) shall pay Plaintiff's reasonable attorney's fees and costs associated with filing and arguing those aspects of its motion regarding the fourth set of cup cutter segments, spoliation of evidence, and the failure to pay for site-inspection costs; and

(9)   Plaintiff shall, within **THIRTY (30) DAYS** of the date of this Decision and Order, submit contemporaneous time records and documentation identifying and supporting the amount of attorney's fees and costs it has so incurred due to having to file and argue those aspects of its motion regarding the fourth set of cup cutter segments, spoliation of evidence, and the failure to pay for site-inspection costs.

Dated: April 6, 2012
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge