UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PLC TRENCHING CO., LLC,

                              Plaintiff,                  6:11-CV-0515
                                                               (GTS/DEP)

v.

GARY NEWTON, JR.; CABLE SYS.
INSTALLATION LLC; and CABLE SYS.
INSTALLATIONS CORP.,

                              Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCHNADER HARRISON SEGAL & LEWIS LLP<br>  Counsel for Plaintiff<br>140 Broadway, Suite 3100<br>New York, NY 10005 | CYNTHIA A. MURRAY, ESQ.<br>THEODORE L. HECHT, ESQ. |
| BOND, SCHOENECK & KING PLLC<br>  Counsel for Defendant Gary Newton, Jr.<br>350 Linden Oaks, Suite 310<br>Rochester, NY 14625 | BRIAN LAUDADIO, ESQ.<br>GREGORY J. MCDONALD, ESQ. |
| FRENCH, ALCOTT PLLC<br>  Counsel for Defendant Gary Newton, Jr.<br>300 South State Street<br>Syracuse, NY 13202 | DANIEL J. FRENCH, ESQ. |
| HISCOCK & BARCLAY<br>  Counsel for Defendant Gary Newton, Jr.<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202 | GABRIEL M. NUGENT, ESQ. |
| LeCLAIR RYAN<br>  Counsel for Corporate Defendants<br>290 Linden Oaks, Suite 310<br>Rochester, NY 14625 | ANDREW P. ZAPPIA, ESQ.<br>WENDELL W. HARRIS, ESQ.<br>MICHAEL J. CROSNICKER, ESQ. |

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this misappropriation-of-trade-secrets action filed by PLC Trenching Co., LLC ("Plaintiff") against Gary Newton, Jr., Cable System Installation LLC, and Cable System Installations Corp. ("Defendants"), is Defendants' motion to (1) bond the Court's previously issued monetary sanction against Defendants for the use of cup cutter segments pending their interlocutory appeal, and (2) stay the Court's previously issued laying box injunction against Defendants pending their interlocutory appeal. (Dkt. No. 124.) For the reasons set forth below, Defendants' motion is denied.

**I.      RELEVANT BACKGROUND**

Because the parties have, in their motion papers, demonstrated an accurate understanding of the case's procedural history, the legal standard governing Defendants' motion, and the arguments made by the parties regarding that motion, the Court will not repeat that information in its entirety in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will recite that information only where necessary in this Decision and Order.

**II.     GOVERNING LEGAL AUTHORITY**

Rule 62(d) of the Federal Rules of Civil Procedure grants a party an automatic stay to a judgment by supercedeas bond except, in pertinent part, to "an interlocutory or final judgment in an action for an injunction." Fed. R. Civ. P. 62(d),(a).[1] In other cases, Fed. R. Civ. P. 62(c) provides that, in its discretion, a court "may suspend . . . an injunction on terms for bond" while an appeal of that injunction is pending. Fed. R. Civ. P. 62(c).

---

[1] A "judgment" is "a decree or any order from which an appeal lies." Fed. R. Civ. 54(a).

Generally, to determine if a party is entitled to a discretionary stay of an injunction pursuant to Fed. R. Civ. P. 62(c), a court is to consider the following four factors: (1) the strength of the applicant's showing that he will succeed on appeal on the merits; (2) the danger that the applicant will be irreparably injured if the court denies the stay; (3) whether the stay will substantially harm other interested parties; and (4) the public interest in granting the stay. *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir. 1994); *Frommert v. Conkright,* 639 F. Supp.2d 305, 309 (W.D.N.Y. 2009).

### III.   ANALYSIS

After carefully considering the parties' motion papers, the Court denies Defendants' motion for the reasons stated by Plaintiff in its opposition memorandum of law.  (Dkt. No. 130, at 4-13 [attaching pages "1" through "10" of Plf.'s Opp'n Memo. of Law].)  To those reasons the Court would add only nine brief points.

**A.   Additional Points Regarding Monetary Sanctions**

Five of the Court's nine points regard Defendants' request for a stay of its monetary sanctions.

First, Defendants are incorrect that they have an absolute right, under Fed. R. Civ. P. 62(d), to stay by bond the monetary sanctions imposed on them by the Court for violating the Court's Temporary Restraining Order.  Although it is true that, generally, "a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d)" (*Am. Manufs. Mutual Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S.Ct. 1, 3 [1966]), a party taking an appeal from a district court's civil contempt order issuing sanctions *arising from a violation of an injunction* does not have an automatic right to a stay of the monetary sanctions by bond because the civil

contempt order in that scenario is an "interlocutory . . . judgment in an action for an injunction." Fed. R. Civ. P. 62(a)(1).

None of the three cases cited by Defendants required a stay from an Order imposing monetary sanctions for violating a Temporary Restraining Order. (Dkt. No. 133, at 10 [attaching page "5" of Defs.' Reply. Memo. of Law].) Indeed, more analogous cases undermine Defendants' position. *See Union of Prof'l Airmen v. Alaska Aeronatical Indus., Inc.*, 625 F.2d 881, 882-83 (9th Cir. 1980) (dismissing appeal from district court order that, *inter alia*, denied the defendants' motion for stay by bond during appeal from order of civil contempt and monetary fine for violating preliminary injunction); *Am. St. Gobain Corp. v. Armstrong Glass Co.*, 300 F. Supp. 419, 420-21 (D. Tenn. 1969) (denying defendant's motion for stay by bond during appeal from court's "order of adjudging [the defendant] in contempt"); *cf. Law v. NCAA*, 134 F.3d 1025, 1030-31 (10th Cir. 1998) (finding that defendants had no right to stay by bond under Fed. R. Civ. P. 62[d] because they had no right to appeal an interim attorneys' fee award which must "piggy-back" on injunction appeal).

The Court is persuaded by these latter cases. The Second Circuit has generally recognized that a civil contempt judgment is interlocutory in nature and has repeatedly refused to hear interlocutory appeals from those judgments.[2] If an appeal from that judgment is generally

---

[2] *See, e.g., Pro-Choice Network of W. New York v. Walker*, 994 F.2d 989, 993-94 (2d Cir. 1993) (holding that, if the sanctions imposed by the district court are for civil contempt in violation of a temporary restraining order, a party may not appeal them except as part of a final judgment); *U.S. v. Johnson*, 801 F.2d 597, 599 (2d Cir. 1986) ("The general rule that orders of civil contempt against parties in pending litigation are not immediately appealable prevents interlocutory appeals that fragment the disposition of what for practical purposes is a single controversy.") [internal quotation marks omitted]. For reasons set forth more completely in Part III.B. of this Decision and Order, the Court rejects Defendants' argument that the Court's contempt order is "independently appealable because it provides for new mandatory injunctive relief." (Dkt. No. 133, at 7.)

not permitted, it would make little sense to confer on a party an absolute right to stay by bond of the entire action pending that appeal. More importantly, allowing a party to stay a civil contempt judgment arising from a violation of an injunction would undermine and impede the ability of the Court to enforce the injunction. *Cf.* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3921.2 (2d ed.) ("The power to act pending appeal from preliminary injunction rulings is illustrated by district court rulings . . . on matters of . . . contempt.").

Second, because Defendants do not enjoy an absolute right to a stay of the monetary sanction under the circumstances, it is appropriate for the Court to consider whether they should be afforded a discretionary stay under the circumstances. As part of that analysis, the Court finds that sufficient evidence was presented upon which it could render a finding that Plaintiff was actually harmed by Defendants' violation of the Court's Temporary Restraining Order. Over the course of this action, Plaintiff adduced evidence that, through Defendants' wrongful use of its patents, trade secrets and proprietary information, it had been placed at a comparative disadvantage by its "primary competitor" in the marketplace–a company that used trenching systems similar to those used by Plaintiff, that was staffed with former employees of a company with whom Plaintiff had worked, and that had solicited and hired various of Plaintiff's employees.³ Plaintiff also adduced evidence that the information in question enabled Plaintiff "to compete for work."⁴ Defendants themselves have acknowledged their "compet[itive]"

---

³ (Dkt. No. 8, at ¶¶ 20, 22-24, 36, 38 [Decl. of Critelli]; *see also* Dkt. No. 49, at ¶ 13 [Suppl. Decl. of Lopata, calling Defendant CSI Plaintiff's "direct competitor"]; Dkt. No. 80, at 19, 21-22 [attaching pages "69," "71" and "72" of Redacted Tr. of Prelim. Injunct. Hrg., acknowledging that the parties are "[]competit[ors]"]; Dkt. No. 10, at ¶¶ 19-20 [Decl. of Tyoe, asserting that Def. Newton viewed Plaintiff's offer letters to his co-workers, before leaving his employment with Plaintiff].)

⁴ *See* Unredacted Tr. of Prelim. Injunct. Hrg. at 42.

relationship with Plaintiff, and the "substantial risk" that either competitor's obtaining the other's confidential information, would cause "clearly defined and serious injury or harm to the parties' . . . competitive positions and proprietary interests."[5] As for the Court's determination of the amount of the compensatory sanction, that was based on a reliance on the record evidence, and a reasonable assessment of the credibility of the testimony adduced by the parties. (*See, e.g.,* Dkt. No. 95, Attach. 1, at ¶ 33 [Decl. of Lopata]; Dkt. No. 116, at ¶ 5 [Decl. of Singh].)

Third, in the alternative, sufficient evidence was presented to the Court upon which the Court could render a finding that a sanction that was partly coercive was necessary under the circumstances. In assessing the amount of a coercive sanction necessary to curb Defendants' violative behavior, the Court clearly considered the evidence presented by Plaintiff regarding the magnitude, repetitiveness and flagrance of Defendants' abuses. (*See, e.g.,* Dkt. No. 120, at 12-13, 22 [attaching pages "12," "13," and "22" of Tr. of Show Cause Hrg.].) Moreover, before, during and after the Show Cause Hearing, Defendants failed adduce evidence establishing that they were financially unable to pay a monetary sanction, even when they were presented with the specific amount of the sanction requested by Plaintiff (which was nearly twice the amount of the sanction imposed by the Court). (*See generally* Dkt. Nos. 107-109 [Defs.' Pre-Hearing Affidavits]; Dkt. No. 120 [Tr. of Show Cause Hrg.]; Dkt. Nos. 116-117 [Defs.' Post-Hearing Affidavits].) Nor have they done so on their current motion. (*See generally* Dkt. No. 124 [Defs.' Motion]; Dkt. Nos. 133, Attach. 1-3 [Defs.' Reply Affidavits and Exhibit].)

---

[5] (*See, e.g.*, Dkt. No. 107, Attach. 10, at 3 [attaching page "2" of letter from Wendell Harris to Cynthia Murray, dated Dec. 19, 2011]; Dkt. No. 107, Attach. 21, at 5 [attaching page "1" of Defs.' Proposed Protective Order]; Dkt. No. 120, at 28 [attaching page "28" of Tr. of Show Cause Hrg.].)

The Court notes that Defendants' declaration *estimating* their margin profit from trenching at the project in Webberville, Texas, on a *prospective* basis, has little if anything to do with their actual financial ability (e.g., based on their corporate assets) to pay the monetary sanction requested by Plaintiff. (Dkt. No. 116, at ¶ 5 [Decl. of Singh].) In any event, that portion of the declaration was unsupported by any accompanying documentary evidence, and was contradicted by evidence adduced by Plaintiff. (Dkt. No. 95, Attach. 1, at ¶ 33 [Decl. of Lopata].)

The Court notes also that Defendants' reliance on their general counsel's Second Declaration (containing assertions regarding an unquantified financial harm that would befall Defendants if "the Court were to enter a preliminary injunction restraining use of CSI's . . . laying boxes") is misplaced. (Dkt. No. 133, at 14 [attaching page "9" of Defs.' Reply. Memo. of Law]; Dkt. No. 62, at ¶¶ 10-12.) Any such financial harm flowing from the laying box injunction has absolutely nothing to do with Defendants' actual financial ability (e.g., based on their corporate assets) to pay the monetary sanction regarding the cup cutter segments.[6]

Fourth, with regard to Defendants' argument that coercive sanctions may never be paid to an opposing party, sanctions that are both coercive and compensatory may indeed be paid to an opposing party. *See N.A. Sales Co., Inc. v. Champion Indus. Corp.*, 736 F.2d 854, 857 (2d Cir. 1984) (finding to be proper a coercive sanction payable to movant, where sanction trebled movant's damages); *cf. New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353-54 (2d Cir. 1989) ("[T]he district court abused its discretion when it allocated this coercive sanction

---

[6] In any event, the Court notes that its Preliminary Injunction does not, in fact, restrain use of "CSI's . . . laying boxes," but only the use of those of CSI's laying boxes that either (1) represent or embody Plaintiff's patents or (2) represent, embody or infringe on Plaintiff's trade secrets and/or proprietary information. Defendants' general counsel's Second Declaration does not address that fact. (*See generally* Dkt. No. 62.)

to plaintiff N.O.W. . . . [when] N.O.W. had made no showing of compensable injury or actual loss due to defendants' failure to obey the court order. . . . A sanction may, of course, be both coercive and compensatory. Yet, some proof of loss must be present to justify its compensatory aspects."). Here, at the very least, the sanction in question is both coercive and compensatory, for the reason stated above. Moreover, the sanction in question is predominantly compensatory, as indicated by the fact that the Court's stated rationale for the sanction predominantly concerns compensation rather than coercion. (Dkt. No. 119, at 2-12.) *Cf. Paramedics Electromedicina Comercial, Ltda v. GE*, 369 F.3d 645, 657 (2d Cir. 2004) (concluding that the coercive portion of the sanction did not predominate over the compensatory portion of the sanction, because the district court's stated rationale for the former portion of the sanction was as dominant as its stated rationale for the latter portion of the sanction).

The Court notes that Defendants themselves have cited authority indicating that coercive sanctions may be paid to an opposing party where evidence exists that doing so would have an additional coercive effect on the offending party. *See Terry*, 886 F.2d at 1354 ("Inasmuch as no proof of loss was offered on behalf of N.O.W., no evidence of actual injury due to Operation Rescue's activities was shown and *there was no evidence that awarding the contempt sanction to N.O.W. would have additional coercive effect on defendant's behavior*, the district court's order directing defendants jointly and severally to pay a $50,000 contempt sanction to N.O.W. must be modified by directing that sanction to be payable into court."). Here, such evidence exists: for example, the evidence that Defendants view Plaintiff as their primary competitor, against whom they must obtain an advantage (e.g., by acquiring its technology and employees) in order to succeed in the market.

Fifth, the Court agrees with Plaintiff that, under the circumstances, "[t]he coercive effect of the sanction will be completely vitiated by permitting defendants to post a bond." (Dkt. No. 130, at 9 [attaching page "6" of Plf.'s Opp'n Memo. of Law].) Under the circumstances, prejudice to Plaintiff (due to Defendants' continued possession and use of Plaintiff's trade secrets and confidential information during the pending of Defendants' appeal) would be unavoidable, were Defendants able to walk away from the Court's finding of contempt with only a slap on the wrist: they would surely continue their insolent behavior. *Cf. Koninklijk Philips Elecs. N.V. V. KXD Tech., Inc.*, 539 F.3d 1039, 1045 (9th Cir. 2008) (denying interlocutory appellate review of the sanctions imposed by the district court against the defendants where "[t]he civil sanctions that were imposed are part of an ongoing litigation in which the defendants have refused to comply with the district court's orders"). The fact that Defendants claim they are currently complying with the Preliminary Injunction only reinforces the Court's conclusion that the sanction of having to pay the money in its entirety to Plaintiff is working.

    **B.**    **Additional Points Regarding Laying Box Injunction**

The remaining four of the Court's nine points regard Defendants' request for a stay of its laying box injunction.

First, because Defendants concede that this portion of the April Order is "an interlocutory or final judgment in an action for an injunction," they acknowledge that are not entitled to an automatic stay of the laying box injunction under Fed. R. Civ. P. 62(d), but instead must rely on the Court's exercise of discretion under Fed. R. Civ. P. 62(c). (*See, e.g.,* Dkt. No. 124, Attach. 1, at 13-16 [attaching pages "9" through "12" of Defs.' Memo. of Law].)

Second, as part of that discretionary analysis, the Court notes that Defendants are incorrect that the Court's Preliminary Injunction did not sufficiently specify the trade secret and proprietary information referenced in that injunction.[7] For example, the Court's Decision and Order of December 12, 2011, specifically (1) identified Plaintiff's three patents by their U.S. Patent Numbers, (2) described Plaintiff's proprietary and confidential information as including information wrongfully obtained by Defendant Newton, and possessed by Defendants, regarding Plaintiff's "screening laying boxes," "cup cutter segments," and "dozer-track modification for the Rivard wheel trenching machine," and (3) described Plaintiff's trade secrets as including information wrongfully obtained by Defendant Newton, and possessed by Defendants, regarding Plaintiff's "screening laying boxes" and "cup cutter segments." (Dkt. No. 72, at 4-5, 7, 9, 24.)

As a result, the Preliminary Injunction in this action specified (1) what the trade secrets regarded (i.e., "screening laying boxes" or "cup cutter segments"), (2) how the trade secrets were obtained (i.e., through Defendant Newton's misappropriation during his departure from Plaintiff's employment), and (3) the fact that the trade secrets must already have been given to Defendants and in their possession. For these reasons, the preliminary injunction in this action is clearly distinguishable from the preliminary injunctions in the two cases cited by Defendants, which did not specify such facts.[8]

---

[7] The Court notes that any challenge by Defendants to the specificity of the terms used in the Continued Temporary Restraining Order of May 20, 2011, would be clearly disingenuous and, indeed, precluded, given that, on May 20, 2011, they themselves stipulated to that Continued Temporary Restraining Order. (*See* Text Minute Entry dated May 20, 2011.)

[8] *See Corning, Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 157-59 (2d Cir. 2004) (vacating preliminary injunction that forbade defendants from "engag[ing] in the misappropriation of [plaintiff's] trade secrets," because the preliminary injunction "does not identify the trade secrets . . . that it bars [defendants] from . . . misappropriating"); *IDG USA,*

In addition, and more importantly, the terms "screening laying boxes" and "cup cutter segments," used by the Court in the Preliminary Injunction, track the language and exhibits used by the parties during the confidential portion of the Preliminary Injunction Hearing. *See, e.g.,* Unredacted Tr. of Prelim. Injunct. Hrg. at 19-21, 24-25, 27-29, 32-50, 56-59, 109, 114-117; Plf.'s Hrg. Exs. 9, 34-39. The Second Circuit recognizes that, "[w]hile an order granting a preliminary injunction may not incorporate extrinsic documents by reference, it can track language from . . . documents in order to add specificity to the injunction." *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88-89 (2d Cir. 2011). This rule makes eminent sense, given the sensitive nature of the information in question. *See Callmann on Unfair Comp., Tr. & Mono.* § 23:55 (4th Ed.) ("An injunction against disclosure of trade secrets need not specify the precise details of the secret.").

The Court notes that, contrary to Defendants' argument, their violation of the Court's Preliminary Injunction clearly resulted not from their misunderstanding of what constitutes a "trade secret" but their (1) cavalier attitude toward these proceedings and (2) their willful attempt to make the Preliminary Injunction mean what they want it to mean, rather than what it plainly states. Their cavalier attitude is exemplified by the fact that, at the Preliminary Injunction Hearing that occurred on December 7, 2011, Defendants' general counsel testified that he did not recall ever having spoken to Defendants' Chief Executive Officer about Plaintiff's motion for a preliminary injunction, and did not know if the Chief Executive Officer even know about the motion. *See* Unredacted Tr. of Prelim. Injunct. Hrg. at 130-31. Their sheer

---

*LLC v. Schupp*, 416 Fed. App'x 86, 88 (2d Cir. 2011) (vacating preliminary injunction that forbade defendant from "disclosing [plaintiff's] trade secrets," because "[a]n injunction that simply prohibits the disclosure of trade secrets or confidential information, with no additional description of what secrets or confidential information are to be protected, is insufficiently specific").

willfulness is exemplified by the fact that their argument is essentially a reincarnation of their previously asserted argument that they should be advised of what particular features in Defendants' laying boxes embody Plaintiff's trade secrets–so that Defendants can isolate and remove them, rather than forfeit the offending laying boxes to Plaintiff in their entirety, as required by the Preliminary Injunction. As the Court explained in its Decision and Order of April 6, 2012, "while an injunction requiring Defendants to forfeit the laying boxes in their entirety may appear strict, it is entirely necessary and appropriate given (1) Plaintiff's need to retain the secrecy and confidentiality of certain information regarding its laying boxes, and (2) Defendants' incorrigible conduct thus far." (Dkt. No. 119, at 7.)[9]

Third, Defendants are incorrect that the Court's Decision and Order of April 6, 2012, either (1) expands on the Court's Preliminary Injunction or (2) is based in part on infringement of patents. (Dkt. No. 119.) The Decision and Order merely directed Defendants to do what they were already required to do by the Preliminary Injunction;[10] the Court used certain different

---

[9] Defendants' argument that the Preliminary Injunction issues a "broad restraint[] on [their] use of laying boxes" mischaracterizes the nature of the injunction, which is targeted at preventing Defendants' repeated possession and use of laying boxes that either (1) represent or embody Plaintiff's patents or (2) represent, embody or infringe on Plaintiff's trade secrets and/or proprietary information. If there is no such possession or use, then Defendants are not ordered to cease using the laying boxes and return them. (Dkt. No. 97, at 4.)

[10] (*Compare* Dkt. No. 72, at 24 ["Defendants shall return *all copies* of digital computer files, physical and other representational or intellectual embodiments of Plaintiff's patents, trade secrets and proprietary information (including, but not limited to, information regarding cup cutter segments, laying boxes and dozer track modifications for the Rivard trencher) obtained from Plaintiff and in Defendants' possession; . . . Defendants . . . are enjoined from directly or indirectly manufacturing, *using, exploiting,* selling, transferring, copying, *secreting*, or otherwise employing or *retaining possession of* or *exerting any right over,* Plaintiff's trade secrets and proprietary information (including, but not limited to, information regarding cup cutter segments, laying boxes and dozer track modifications for the Rivard trencher) in connection with any of their business or personal activities; . . . Defendants . . . are

language merely to address Defendants' unfounded insistence that they do not understand what is required by the Preliminary Injunction.[11]  Moreover, the Decision and Order was in no way based on patent *infringement* (which requires the manufacture, use or sale of patented inventions for purposes of 35 U.S.C. § 271[a], a claim previously dismissed without prejudice from Plaintiff's Amended Complaint); rather, the Decision and Order was based, in part, on Defendants' return and non-disclosure of the information embodied in Plaintiff's patents–relief that was related to Plaintiff's *Computer Fraud and Abuse Act claim and breach-of-fiduciary-duty claim.* (Dkt. No. 119, at 7.)  This fact that was rather clearly explained in the Court's Preliminary Injunction.  (Dkt. No. 72, at 22.)[12]

Fourth and finally, while the Court at all time acknowledges and respects a zealous advocate's utilization of the procedures for seeking reconsideration, stays, and interlocutory appeals, the Court cannot help but note that, if Defendants spent half the time and effort complying with the Court's Orders as they do trying to evade their obligations under those Orders, Defendants would be far closer to a fair and reasonable resolution of their dispute with Plaintiff.

---

enjoined from directly or indirectly transferring, copying, *secreting*, or *retaining possession* of representational or intellectual embodiments of Plaintiff's patents (including, but not limited to, information regarding cup cutter segments, laying boxes and dozer track modifications for the Rivard trencher). . . ."] [emphasis added] *with* Dkt. No. 119, at 7-8, 11 ["Defendants are ordered to do the following: (1) not adjust, alter, disassemble, remove any portion of, conceal any portion of and/or destroy any portion of any of their laying boxes that represent, embody and/or infringe on Plaintiff's patents, trade secrets, and/or proprietary information; [and] (2) immediately deliver (at Defendants' expense) any such laying boxes in their entirety to Plaintiff . . . ."].)

[11]  The Court has rejected this argument twice. (*See* Dkt. No. 97, at 4-5; Dkt. No. 119, at 7.)

[12]  *Cf. Von Holdt v. A-1 Tool Corp.*, 714 F. Supp.2d 863, 865-66, 873-75 (N.D. Ill. 2010) (treating computer-assisted designs of a molded bucket as both patented technology for purpose of a patent claim, and "confidential files" for purpose of a CFAA claim).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to bond the monetary sanction for the use of cup cutter segments pending appeal and to stay the laying box injunction pending appeal (Dkt. No. 95) is **DENIED**.  <u>Defendants are respectfully reminded of their duty to expeditiously and faithfully comply with the Court's prior Orders</u>.

Dated: May 18, 2012
    Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge